No. 70,100

In the Matter of GEORGE ROBERT DEEDS, *Respondent.*

(864 P.2d 1194)

Opinion filed December 10, 1993.

*Martha M. Snyder*, deputy disciplinary administrator, argued the cause, and Bruce E. Miller, disciplinary administrator, was with her on the formal complaint for the petitioner.

*D. Lee McMaster*, of Wichita, argued the cause for the respondent.

*Per Curiam*: This an original proceeding in discipline against George Robert Deeds, an attorney duly admitted to the practice of law in Kansas. A hearing panel of the Kansas Board for Discipline of Attorneys unanimously found violation of Disciplinary Rule 6-101(A)(2) (1993 Kan. Ct. R. Annot. 227), MRPC 1.2(c) (1993 Kan. Ct. R. Annot. 260), MRPC 1.3 (1993 Kan. Ct. R. Annot. 263), MRPC 1.4(b) (1993 Kan. Ct. R. Annot. 267), and MRPC 1.16 (d) (1993 Kan. Ct. R. Annot. 304).

The panel made the following findings of fact:

"1. George Robert Deeds is an attorney at law, Kansas Attorney Registration No. 04852. His last registration address with the Clerk of the Appellate Courts of Kansas is 375 North Woodlawn, Wichita, Kansas 67208.

"Count I

"2. In September of 1986, George Robert Deeds was retained by Karen S. Drury to file a divorce action on her behalf, her stated goal being to have the matter concluded by December, 1986. By October 8, 1986, Mr. Deeds had been given a list of property and values.

"3. No divorce action was filed by Mr. Deeds. On December 4, 1986, Mr. Drury filed a divorce action and obtained Ex Parte Temporary Orders which were served on Ms. Drury. Mr. Deeds entered his appearance for Ms. Drury, as Respondent in the divorce action, on December 23, 1986.

"4. By Journal Entry and Decree of Divorce dated February 23, 1987, Ms. Drury was awarded alimony in the amount of $15,000.00 with no interest if paid within thirty (30) days and interest at the statutory rate thereafter. The alimony was a judgment and she was granted a lien on the real estate located at 1225 West 57th Street North, Wichita, Kansas, which was set aside to her husband.

"5. On February 24, 1987, Ms. Drury went to Mr. Deeds' office and, upon his advice, signed a Quit Claim Deed on the real estate in which she

had, the day prior, been granted a lien. The Quit Claim Deed did not contain any reservation or exception concerning her lien.

"6. Mr. Drury wanted to borrow money and mortgage the real estate on which Ms. Drury had a lien. Part of the loan proceeds would be used to make a partial payment on the alimony awarded to Ms. Drury. On April 9, 1987, after consulting with Mr. Deeds, Ms. Drury signed a Subordination Agreement to Arkansas Valley State Bank and signed a document entitled 'Acknowledgement' in which she agreed to allow her husband to pay $7,500.00 in lump sum on the alimony and to pay interest only on the remaining balance at the rate of 8% for ten (10) years.

"7. Mr. Deeds did not review the Subordination Agreement prior to advising Ms. Drury.

"8. By letter dated October 30, 1988, Mr. Drury wrote to Mr. Deeds indicating he was contemplating bankruptcy and discharging the remaining alimony due to Ms. Drury. He also made some charges concerning Ms. Drury's personal conduct. Mr. Deeds failed to provide a copy of the letter to Ms. Drury and failed to inform her of its receipt.

"9. During this same time period, Mr. Drury failed to make some interest payments to Ms. Drury. In November, 1988, Ms. Drury contacted Mr. Deeds for assistance in collection. In January of 1989, Mr. Deeds sent a Quit Claim Deed to Mr. Drury granting Mr. Drury's interest in the real estate to Ms. Drury.

"10. Mr. Drury returned the Quit Claim Deed to Mr. Deeds having marked it 'VOID'. He also sent a letter to Mr. Deeds' office which was written to Ms. Drury. Mr. Deeds failed to forward this letter to Ms. Drury and failed to inform her of its receipt. In the letter, Mr. Drury stated: 'My support will end in bankruptcy court. Go ahead Bob Deeds pass your judgement.'

"11. On February 21, 1989, Richard Drury filed bankruptcy. Ms. Drury called Mr. Deeds and sent him the information she had received, including a Notice for Meeting of Creditors. Thereafter, when Mr. Deeds claimed he had not seen the information, she hand delivered a copy of the same documents to his office.

"Ms. Drury also had several telephone conversations with Mr. Deeds concerning the bankruptcy and the money owing to her from Mr. Drury. Mr. Deeds assured her there was no cause for concern, that her interest was protected and that she may get the house back to satisfy the amount owing to her.

"Mr. Deeds did not review the bankruptcy file to ascertain whether Mr. Drury was attempting to discharge his obligation to Ms. Drury as he had threatened to do in the October 30, 1988, letter to Mr. Deeds and the January 10, 1989, letter to Ms. Drury which was mailed to Mr. Deeds.

"12. Mr. Drury was granted a discharge in bankruptcy on November 27, 1989.

"13. Mr. Drury had paid nothing further to Ms. Drury after the filing of the bankruptcy. Accordingly, in November of 1990, Ms. Drury requested

that Mr. Deeds go to court to collect her money. He agreed to do so. No action was taken by Mr. Deeds. No court action was initiated. Mr. Deeds failed to return numerous telephone calls from Ms. Drury.

"14. Four (4) months later, in March of 1991, Ms. Drury contacted Mr. Deeds outlining her desired course of action. She indicated that her daughter was buying the real estate from Mr. Drury and that an escrow had been established. She indicated she would like to put a hold on the money being paid to Mr. Drury through this escrow.

"15. Three (3) months later, Mr. Deeds had still taken no action. Ms. Drury wrote to Mr. Deeds. By letter dated June 15, 1991, she made reference to her request in March and informed Mr. Deeds that action was long overdue. She requested that he take the specific action previously requested.

"16. One (1) month later, Mr. Deeds had still taken no action. Ms. Drury again wrote to Mr. Deeds. By letter dated July 12, 1991, sent by certified mail, Ms. Drury informed Mr. Deeds that if she did not hear from him by July 22, 1991, their professional relationship would be terminated.

"17. On Sunday, July 21, 1991, Mr. Deeds called Ms. Drury. He apologized, explained that he had been busy, that his wife was ill and promised to call in one (1) week. Mr. Deeds did not call.

"18. At no time did Mr. Deeds advise Ms. Drury concerning and, in fact, did not know, the time limitations on taking action on her judgment. On February 27, 1992, Ms. Drury's judgment became dormant.

"Count II

"19. By letter dated February 17, 1992, Ms. Drury filed a complaint with the Disciplinary Administrator's Office. By letter dated March 3, 1992, Mr. Deeds was provided a copy of the letter of complaint and a written response was requested within ten (10) days.

"On March 17, 1992, the matter was referred to John S. Seeber for investigation. Mr. Seeber notified Mr. Deeds of his role and requested a written response within ten (10) days.

"By letter dated March 26, 1992, Mr. Deeds denied each and every allegation. Mr. Seeber requested a more specific response which Mr. Deeds provided in a letter dated April 17, 1992.

"20. Prior to responding to the disciplinary complaint filed by Ms. Drury, Mr. Deeds indicated to Mr. Seeber that he had reviewed his file maintained in the Drury matter and had reviewed the bankruptcy file maintained by Daniel H. Phillips, the attorney who represented Richard Drury in the bankruptcy.

"In his letter of April 17, 1992, Mr. Deeds denied he 'ever received copies concerning the bankruptcy of Mr. Drury while that case was pending.'

"On June 17, 1992, during an interview with Mr. Seeber, Mr. Deeds indicated that notice of the bankruptcy had been sent to him by Mr. Drury.

"Mr. Deeds' file contained two (2) copies of the Notice for Meeting of Creditors dated February 22, 1989, one of which was stapled to an envelope postmarked March 30, 1989, with Ms. Drury's return address.

"21. In his letter of April 17, 1992, Mr. Deeds denied receiving any letter from Ms. Drury in which she outlined her desired course of action. He confirmed this position during the interview on June 17, 1992. He stated that when he denied this he thought Ms. Drury was stating she sent him a letter in November of 1990. The language of the letter of complaint is clear and does not state that a letter was sent in November of 1990.

"In the same paragraph, Mr. Deeds denied that Ms. Drury ever informed him that her daughter was buying the real estate from Mr. Drury [or that] payments were being made through an escrow.

"Mr. Deeds' file contained the letter of June 15, 1991, from Ms. Drury which set out the desired course of action and made reference to the escrow. It further referenced a contact in March in which the same information had been provided.

"22. In his letter of April 17, 1992, Mr. Deeds stated that he suggested several times to Ms. Drury that other counsel would be appropriate. During the interview on June 17, 1992, Mr. Deeds stated that he had begun suggesting this in January of 1991.

"In her letter of June 15, 1991, Ms. Drury requested that Mr. Deeds refer her to another attorney if he was too busy. In her subsequent letter of July 12, 1991, Ms. Drury makes reference to this earlier request. Further Mr. Deeds' telephone call to Ms. Drury on July 21, 1991, in which he apologized for the delay and promised to call in one (1) week contradicts this assertion by Mr. Deeds.

"23. Mr. Deeds denied he ever represented Ms. Drury on collecting the alimony. He stated she never asked him to represent her in this capacity. The letters found in Mr. Deeds' file from Ms. Drury contradict this assertion by Mr. Deeds."

The panel then considered all matters in mitigation and aggravation. The panel unanimously recommended that pursuant to Supreme Court Rule 203(a)(3) (1993 Kan. Ct. R. Annot. 162), respondent be censured by the Supreme Court and that the Supreme Court not publish the censure. Respondent did not file any exception to the report, findings, and recommendations of the State Board for Discipline of Attorneys.

Respondent appeared in person and by and through his attorney, D. Lee McMaster. His attorney requested that this court adopt the recommendation of the panel.

The court, having considered the record, the report of the panel, the statements of counsel, and matters submitted in mitigation and aggravation, finds that respondent should be disciplined by public censure.

IT IS THEREFORE ORDERED that George Robert Deeds be and he is hereby disciplined by public censure for his violations of the Code of Professional Responsibility.

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the cost herein be assessed to respondent.

HOLMES, C.J., not participating.

MILLER, C.J. Retired, assigned.